32768. DEATON *v.* TALIAFERRO.

DECIDED JANUARY 6, 1950.

*William Butt,* for plaintiff in error.

*T. H. Crawford, Henderson & Burtz,* contra.

SUTTON, C. J. This was a proceeding instituted by Curtis Deaton against George G. Taliaferro, before the Ordinary of Fannin County, seeking the removal of an obstruction from an alleged private way on the land of the defendant. From the petition the following appears: The defendant owns certain land in Fannin County in land lot 9, 8th district, 2nd section, known as the W. A. Taliaferro place, adjoining and lying on the east side of the right-of-way of the Louisville and Nashville Railroad Company, over which the plaintiff has had the continued and uninterrupted use of a permanent private way not exceeding 15 feet in width for 7 years, which he has kept open and in repair. This way commences at the residence of the plaintiff and runs in an easterly direction for approximately 50 feet until it reaches the property of the defendant, and then continues across the property of the defendant for approximately 450 yards to State Highway Number 5, between Blue Ridge and Ellijay, and is located upon partly improved and unimproved property. The way has always had two gates on it, but these gates have never interfered with its use by the plaintiff and others, but recently the defendant removed a gate located on the way near the railroad, built the bridge at another place, and placed a barbed-wire fence over the way where the gate was formerly located, and thereby obstructed the use of said private way. The defendant answered, and there was a hearing before the ordinary at which evidence was submitted by both parties.

Curtis Deaton, the plaintiff, testified that: He knew the

private way in question and had used it for 11 years. It had gates across it. His children used the way in going to the highway to catch the school bus. He has a crippled boy, and the other children are young. He had worked the road, mowed the grass on it, and had built a crossing over the railroad. If the gates across the road were ever nailed shut he had no knowledge of it. He had known the road for 13 years, and had lived in his present home for 11 years, and during that time the road had been continuously kept open, and he and his family, consisting of his wife and eight children, had used the road to go to church, to the grocery store, to school, and to Blue Ridge, where he trades and gets his mail. The distance from his home across the private road to the highway is about 400 yards. If his children were required to go up the railroad in going to school they would have to walk about 1½ miles. He had always repaired the road when necessary. About 4 years ago he repaired a bridge at one of the gates, and at different times while he and his family have been using the road he has filled in and worked bad places. He dragged cinders from the railroad right-of-way, and also repaired the gates at both ends of the road. The road has never been closed by either of the gates being locked at any of the time he and his family have been using it, although on one or two occasions he had put a strand of wire around a gate to hold it to the post. The road is not over 15 feet in width, and he has never changed the roadbed from where it was located when he first began to use it when he moved to his present home. No one had ever objected to him and his family using the road until George Taliaferro tore down one of the gates and built a three strand barbed-wire fence where the gate was. He has hauled things over the road whenever he desired, and for Dr. Taliaferro before he let his son George have the property.

John Reece, sworn for the plaintiff, testified that: He had known the road for 20 years, had worked for Dr. Taliaferro fer 11 years, and had lived on the land where Curtis Deaton lived for 11 years. He had seen Curtis Deaton using the road to haul farm produce, and Deaton's children used the road in going to school. While he was living there he and his family used the road. He had done work on the road when necessary, and had

never known the gates to be barred or nailed up. While he was working for Dr. Taliaferro he told the witness to leave the road across the bottom open for the use of everybody who wanted to use it.

Licurgus Thomas, a witness for the plaintiff, testified that he had used the road off and on for 50 years, by walking through it, and that he had been over the road infrequently during the last 4 years, and that the road was like he had known it all the time, and that he had never seen anyone working the road. John Dillinger, sworn for the plaintiff, testified that he had walked over this road every day during 1948, while going to work at Ellijay, and that the road was always open, and that he rode a horse over the road two or three times during 1948. Tobe Ward, a witness for the plaintiff, testified about using the road, and that the public generally had used it.

George G. Taliaferro, the defendant, testified that: He owns the property where the alleged private way is supposed to be. The road has never been worked by anyone except his father, who would have it worked once in a while so that he could haul hay and feed to the barn. A gate was nailed up in 1947 and stayed nailed up for 2 or 3 months. No question was raised by Curtis Deaton or anyone else. To open this way would put him to a great expense and Curtis Deaton has a public road by his door that leads to town, school, and market. Deaton and his children use just one trail after another and never travel any certain one. He had closed the gates so as to better serve his cows. The road has not been kept open by Curtis Deaton or anyone else. Curtis Deaton and his family have used the road since he had known it, and the road had been there for many years. It is not a road but only a trail.

Robert Green, a witness for the defendant, testified that: He worked for George G. Taliaferro at his diary and knew the property. The witness nailed up the gate across the alleged private way at the instance of and under instructions from Dr. W. A. Taliaferro, in June, 1947. It stayed nailed up for 2 or 3 months. Neither Curtis Deaton nor any one else raised any question about the gate being nailed up. For the several years that he had known the road Curtis Deaton had never done any work on it. George G. Taliaferro is now the owner of the land.

D. R. Ballew, sworn for the defendant, testified that 2 or 3 years ago he tried to go over the alleged private way and found the gate nailed up and could not get through, that he had never known much about the road, but at the time he was trying to get to Curtis Deaton to have his mule shod.

Fred and Junior Caldwell, father and son, who were witnesses for the defendant, testified that they knew where the alleged private way is claimed to be, and knew that the way was closed and the gate nailed up, and never heard any complaint from Curtis Deaton, and had never known Deaton to do any work on the way.

Pedro Anderson, sworn for the defendant, testified that: He knew the road about 17 years ago, and had owned the property, but was not well acquainted with it in recent years, because he had sold the property to Dr. Taliaferro. While he owned the property there was a wire fence along where the road is claimed to be, and there was no private way open. He never knew Curtis Deaton to work on any private way while he owned the property.

After argument by counsel, the ordinary rendered a judgment for the plaintiff, requiring the removal of the obstruction, and the defendant applied to the superior court for certiorari, and assigned as error in his application that the judgment of the ordinary was contrary to the weight of the evidence, contrary to law and without evidence to support it, and contrary to justice and equity, and that the ordinary erred in admitting testimony of the plaintiff about his children, over objection. The writ was sanctioned, and after a hearing the judge of the superior court reversed and set aside the judgment of the ordinary and rendered a final judgment in favor of the plaintiff in certiorari, Taliaferro. · Deaton excepted to that judgment as being contrary to law.

■ In order for an applicant to have an obstruction removed from a private way under the provisions of Code §§ 83-112 and 83-119, it is necessary for him to show that he and his predecessors in title have been in constant and uninterrupted use of the way for 7 years or more and that during such time they have kept the way open and in repair, and that it does not exceed 15 feet in width and is the same number of feet originally appro-

priated. *Burnum* v. *Thomas,* 71 *Ga. App.* 690 (31 S. E. 2d, 925), *Roach* v. *Smith,* 79 *Ga. App.* 348, 350 (53 S. E. 2d, 688), *Ponder* v. *Williams,* 80 *Ga. App.* 145, 146 (55 S. E. 2d, 668), and citations.

■ Ordinarily, "Possession must be adverse in order to form the basis for prescription. A notable exception exists, however, in the case of private ways. The use may originate in permission, and yet may ripen by prescription." *Kirkland* v. *Pitman,* 122 *Ga.* 256, 259 (50 S. E. 117). "When the use of a private way originates by permission of the owner, prescription does not begin to run until the user notifies the owner, by repairs or otherwise, that he has changed his position from that of a mere licensee to that of a prescriber." *First Christian Church* v. *Realty Investment Co.,* 180 *Ga.* 35 (178 S. E. 303). "In order for one to take or keep another's land as a road for his private use, he should be compelled to keep it open and in repair. . Keeping it open and working it would be the best evidence of his intention to appropriate it for a road, and would put the owner upon notice that he did intend to appropriate it." *Collier* v. *Farr,* 81 *Ga.* 753 (7 S. E. 860). Also, see *Ponder* v. *Williams,* supra.·

■ The conditions required for one to acquire the right to a private way by prescription and thereby also acquire the right to have an obstruction removed which may have been placed across the way after acquisition of the right to the way, by showing a constant and uninterrupted use of way not exceeding 15 feet in width, being the same number of feet originally appropriated, for 7 years or more, during which time the way has been kept open and in repair by the user, may be met despite the fact that during the time required to acquire the right the owner of the land may have maintained unlocked gates across the way. The plaintiff's right·to the private way, if he had such right, was acquired with the impediment of gates thereon. The evidence, although conflicting, was sufficient to show that the plaintiff had the constant and uninterrupted use of said way for as much as 7 years with the gates which could be opened and closed by him and others using the way. His right to the use of the way having been acquired with the gates thereon, he was restricted to the use of it with the gates and could not have them

removed as obstructions thereon. But if he had acquired the right to the way with out the gates and they had later been erected thereon, gates that could be opened and closed by those using the way, he could have had such gates removed as obstructions. In connection with the above see 17 Am. Jur., Easements, §§ 120, 122, pp. 1011, 1012; 28 C. J. S., Easements, § 98b, p. 783; 73 A. L. R. 778 et seq., and the Georgia cases referred to infra. The cases dealing with gates as obstructions cited by the judge of the superior court and counsel (*Puryear* v. *Clements*, 53 *Ga.* 232, *Salter* v. *Taylor*, 55 *Ga.* 310, *Hill* v. *Miller*, 144 *Ga.* 404, 87 S. E. 385, and *Whiteside* v. *Croker*, 165 *Ga.* 765, 142 S. E. 139), are not authority to the contrary of anything said above, and the holding in each of these cases is, among other things, simply that where a private way without gates thereon has been acquired, gates subsequently placed thereon constitute an obstruction which could be removed in a proper proceeding. We are of the opinion, and so hold, that where the plaintiff's right to the way in question was acquired with unlocked gates thereon, his right to the way was just as effective, except for this impediment, as though his right had been acquired without gates on the way.

■ "Upon the hearing of a writ of certiorari the superior court may order the same to be dismissed, or return the same to the court from which it came, with instructions; and in all cases when the error complained of is an error in law which must finally govern the case, and the court shall be satisfied there is no question of fact involved which makes it necessary to send the case back for a new hearing before the tribunal below, it shall be the duty of the said judge to make a final decision in said case, without sending it back to the tribunal below." Code, § 19-501. On certiorari in the superior court the judge of that court has a wide discretion in granting a new trial in the lower court, especially if it is the first grant of a new trial, where the evidence is conflicting and error is assigned on the judgment (or verdict and judgment where a jury is involved) as contrary to law and evidence, although the judgment of the lower court may be authorized, and this discretion will not be disturbed on review unless it appears that it was manifestly abused, and in this respect the sustaining of a certiorari and the grant of a new

trial thereunder are on the same basis as the grant of a new trial by a presiding judge and the rules applicable thereto, under the provisions of the Code, §§ 6-1608 and 70-206, but in such event the judge of the superior court does not have the authority to sustain the certiorari and then render a final judgment. In this connection see *Burnum* v. *Thomas*, supra; *Ayer* v. *Mitchell*, 69 *Ga. App.* 544 (26 S. E. 2d, 310); *Hurt* v. *Stewart*, 49 *Ga. App.* 251 (174 S. E. 924); *Smith* v. *Williamson & Sons Inc.*, 43 *Ga. App.* 702 (159 S. E. 912); *Tuten* v. *Towles*, 36 *Ga. App.* 328 (136 S. E. 537); *Pittman* v. *Alexander*, 19 *Ga. App.* 475 (91 S. E. 910); *Denton* v. *Butler*, 7 *Ga. App.* 267 (66 S. E. 810); *Holmes* v. *Pye & Co.*, 107 *Ga.* 784 (33 S. E. 816). Even where all of the evidence submitted in the trial court was inadmissible, it was not error for the judge of the superior court, on certiorari, to refuse to render a final judgment, and to remand the case to the lower court for a new trial. *Bass Dry Goods Co.* v. *Electric Storage Battery Co.*, 123 *Ga.* 640 (51 S. E. 579).

■ The sole assignments of error on certiorari from the ordinary to the superior court in this case are (1) that the judgment was contrary to law and evidence, all of the assignments in this respect being in substance the same, and (2) that the ordinary erred in admitting certain testimony of the plaintiff relative to his children. There was evidence before the ordinary in support of all of the material issues in order for the plaintiff to sustain his action, although this evidence was contradicted, as will appear from an examination of the same as shown in the statement in this opinion, and the evidence does not necessarily show that the use of the way was interrupted, or that it was permissive and not prescriptive, or that prescription was prevented by the maintenance of unlocked gates across the way, and accordingly the judgment of the ordinary was authorized, but not demanded. The assignment of error on the admissibility of evidence fails to show what testimony of the plaintiff about his children was objected to, what the nature of the objection was, and what ruling was made by the ordinary, and presented no question for adjudication by the judge of the superior court on the admissibility of evidence, but even if this assignment of error was meritorious, the trial judge was not authorized to render final judgment for the plaintiff in certiorari. Under the circum-

stances of this case as disclosed by the record it would not have been error for the judge of the superior court to have overruled and dismissed the certiorari on the hearing thereof, nor would this court interfere with the exercise of a discretion by the judge of the superior court in sustaining the certiorari on account of the conflicting evidence, provided the case was remanded to the ordinary for retrial, but it was error for the trial judge to sustain the certiorari and then render a final judgment in favor of the plaintiff in certiorari.

*Judgment reversed. Felton and Worrill, JJ., concur.*